**FILED**

UNITED STATES DISTRICT COURT

**JUL 1 1 2013**

DISTRICT OF SOUTH DAKOTA

[signature]
CLERK

SOUTHERN DIVISION

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

|  |  |  |
|---|---|---|
| NATIONAL FARMERS UNION PROPERTY AND CASUALTY COMPANY, | * | CIV 12-4146 |
|  | * |  |
| Plaintiff, | * | AMENDED MEMORANDUM OPINION AND ORDER RE: MOTION FOR SUMMARY JUDGMENT |
| vs. | * |  |
| MARLO J. BIESMA, individually, and in his capacity as an employee/agent for ERNEST R. NAMMINGA, d/b/a Namminga Farms or Ernmore Enterprises, CHRISTOPHER CLEVERINGA; LAURA CLEVERINGA; and FARM BUREAU PROPERTY AND CASUALTY INSURANCE COMPANY, an Iowa corporation, | * |  |
| Defendants. | * |  |

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

Plaintiff, National Farmers Union Property and Casualty Company ("National Farmers Union"), filed a motion for summary judgment on April 15, 2013, requesting that the Court grant declaratory judgment in its favor. Docket 30. On May 13, 2013, Defendants Marlo J. Biesma and Farm Bureau Property and Casualty Insurance Company ("Farm Bureau") filed separate briefs in opposition to National Farmers Union's motion for summary judgment.[1] Dockets 37, 40. Defendants Ernest R. Namminga, Christopher Cleveringa , and Laura Cleveringa joined in Farm Bureau's opposition brief, and Christopher and Laura Cleveringa also joined in Biesma's opposition brief.

---

[1] Farm Bureau also filed a notice indicating that it joined in the arguments, reasonable inferences, and conclusions set forth in Biesma's opposition brief. Docket 39.

1

Dockets 43, 44. For the reasons set forth herein, the Court grants National Farmers Union's motion for summary judgment.

## FACTUAL BACKGROUND

In the light most favorable to Defendants, the facts are as follows: On May 29, 2012, defendants Christopher Cleveringa[2] and Marlo Biesma[3] collided in a motor vehicle accident on Highway 46 in Bon Homme County.[4] More specifically, Cleveringa was traveling east on Highway 46 when he was struck broadside by Biesma, who was traveling south. The police report for this accident describes Cleveringa's vehicle as a truck pulling a large utility trailer, and it describes Biesma's vehicle as a tractor/semi-trailer. Docket 33-3. For purposes of this Memorandum Opinion, the court will refer to Biesma's vehicle as a tractor/semi-trailer. The semi/tractor-trailer that Biesma was operating at the time of the accident belonged to Defendant Ernest Namminga, who had purchased the 1999 Mack CH600 from Blooming Eggs in Bloomfield, Nebraska, for the purpose of hauling chicken manure from Blooming Eggs to his farm near Springfield, South Dakota.

Namminga had hired Biesma in 2009 to pick up the manure and haul it back to Namminga's farm. Namminga also purchased a hopper trailer to attach to the semi for purposes of hauling grain to market. At Namminga's request, Biesma sometimes used the tractor/semi-trailer to haul Namminga's grain to the grain elevator in Tripp, South Dakota or to the Poet ethanol plant in Scotland, South Dakota. At the time of the accident, Biesma was returning to Namminga's farm after having dropped a load of corn at the Poet ethanol plant. Namminga paid Biesma $10 per hour by personal check for the work Biesma performed.

National Farmers Union issued a Private Passenger Auto insurance policy ("Insurance Policy") to defendant Biesma and his wife, Ruth Biesma. The Insurance Policy bears policy number

---

[2] Christopher Cleveringa and his wife, Laura, are residents of Rock Valley, Iowa.

[3] Marlo Biesma is a resident of Tyndall, South Dakota.

[4] Separate from the case in question, defendants Christopher and Laura Cleveringa have filed a federal action against defendants Biesma and Namminga, alleging that Biesma was negligent in his operation of the tractor/semi-trailer at the time of the accident, and that such negligence resulted in severe personal injuries and damages to the Cleveringas.

1PA0023720 and covers the policy period of February 15, 2012, to August 1, 2012. The Insurance Policy specifically covers a 1999 Buick LeSabre Custom and a 1996 Ford Ranger Super, but more generally covers "damages for which any insured person is legally liable because of bodily injury and property damage arising out of the ownership, maintenance or use of a car or utility trailer." Docket 33-1 at 10. The Insurance Policy "provides liability limits in the amount of $100,000 per person / $300,000 per occurrence."

With regard to definitions, provisions, coverages, and exclusions, the pertinent portions of the Insurance Policy read as follows:

DEFINITIONS USED THROUGHOUT THIS POLICY

...
(1)   **We**, **us**, and **our** mean the Company providing this insurance.
(2)   **You** and **your** mean the named insured shown in the Declarations and spouse if living in the same household...
(3)   **Bodily injury** means bodily harm to or sickness, disease or death of any person...
(4)   **Property damage** means damage to or destruction of tangible property, including loss of its use.
(5)   **Car** means a four-wheel land motor vehicle, **utility car** or **farm car** designed for use mainly on public roads. It does not include any vehicle while located for use as a dwelling or other premises.

...
(10)  **Utility car** means, if not used in any business other than farming, a motor vehicle with a GVW less than 15,000 pounds of the pick-up, panel or van body type, other than a **farm car.**
(11)  **Farm car** means a motor vehicle of a truck type not used for business purposes other than farming. **Farm car** does not include a tractor-trailer truck.

Docket 33-1 at 9–10.As to liability coverage, the Insurance Policy provides as follows:

...**We** have no duty to defend any suit or settle any claim for **bodily injury** or **property damage** not covered under this policy.

PART 1 – LIABILITY
COVERAGE A – LIABILITY COVERAGE
**We** will pay damages for which any **insured person** is legally liable because of **bodily injury** and **property damage** arising out of the ownership, maintenance or use of a **car** or **utility trailer.**

Docket 33-1 at 10.

The coverage provided under the Insurance Policy contains fourteen exclusions. Docket 33-1

3

at 10–11. At issue in this case are the following exclusions:

(1)   **Bodily injury** or **property damage** arising out of ownership, maintenance, or use of a vehicle when used to carry persons or property for a charge. This exclusion shall not apply to shared-expense car pools or the occasional carrying of property for a nominal charge.

...

(6)   **Bodily injury** or **property damage** arising out of the ownership, maintenance or use of any **vehicle**, except your **insured car**, used in any business or occupation other than **car business**. This exclusion does not apply to a **private passenger car, utility car,** or **farm car** driven or occupied by **you** or **your relatives** or to a **farm car** driven by **your** employee.

...

(9)   **Bodily injury** or **property damage** arising out of the ownership, maintenance or use of any vehicle, other than **your insured car**, which is owned by or furnished or available for regular use by **you** or a **relative**. This exclusion does not apply to **you** while **you** are maintaining or occupying any vehicle which is owned by a family member or furnished or available for the regular use of a family member.

Finally, under the PART 1 - LIABILITY section, the Insurance Policy addresses the existence of additional sources of auto liability insurance as affecting National Farmers Union's liability as follows:

If there is other applicable auto liability insurance on a loss covered by this Part, **we** will pay **our** proportionate share as **our** limits of liability bear to the total of all applicable liability limits. Any insurance afforded under this Part for a vehicle **you** do not own, however, is excess over any other collectible auto liability insurance. In the event **we** provide coverage for more than one vehicle, whether on one policy or on separate policies, the liability limits available for a vehicle **you** do not own will be the highest limits applicable to any one vehicle **we** insure.

Docket 33-1 at 12.

## SUMMARY JUDGMENT AND INTERPRETATION OF INSURANCE CONTRACTS

"Summary judgment is appropriate when the evidence,[5] viewed in a light most favorable to the non-moving party, demonstrates that there is no genuine issue of material fact, and that the

---

[5] Evidence includes pleadings, depositions, documents, electronically stored information, stipulations, answers to interrogatories, admissions, and affidavits. Fed. R. Civ. P. 56(c).

moving party is entitled to judgment as a matter of law." *Clark v. Kellogg Co.*, 205 F.3d 1079, 1082 (8th Cir. 2000); *see also* Fed. R. Civ. P. 56(a). "Once the motion for summary judgment is made and supported, it places an affirmative burden on the non-moving party to go beyond the pleadings and by affidavit or otherwise designate specific facts showing that there is a genuine issue for trial." *Commercial Union Ins. Co. v. Schmidt*, 967 F.2d 270, 271 (8th Cir. 1992) (internal quotations and citations omitted). "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). Although "the court is required to . . . give [the nonmoving] party the benefit of all reasonable inferences to be drawn from the underlying facts," *Vette Co. v. Aetna Cas. & Sur. Co.*, 612 F.2d 1076, 1077 (8th Cir. 1980), the nonmoving party may not "rest upon mere denials or allegations," *Forrest v. Kraft Foods, Inc.*, 285 F.3d 688, 691 (8th Cir. 2002). Instead, the nonmoving party must "set forth specific facts sufficient to raise a genuine issue for trial." *Id.*

"Disputes involving the interpretation of unambiguous contracts are appropriate cases for summary judgment." *Parish v. Howard*, 459 F.2d 616, 618 (8th Cir. 1972) (citations omitted). In accordance with South Dakota law,[6] "the provisions of an insurance contract 'are to be read and understood according to the natural and obvious import of the language, without resorting to subtle and forced construction for the purpose of either limiting or extending their operation.' " *Prokop v. North Star Mut. Ins. Co.*, 457 N.W.2d 862, 864 (S.D. 1990) (quoting *Cheney v. Metropolitan Life Ins. Co.*, 370 N.W.2d 569, 573 (S.D. 1985)). If the terms are ambiguous and "fairly susceptible [to] different interpretation, the interpretation most favorable to the insured should be adopted." *Prokop*, 457 N.W.2d at 864 (quoting *Black Hills Kennel Club Inc. v. Fireman's Fund Indemnity Co.*, 94 N.W.2d 90, 92 (1959)). Nonetheless, the court will not "seek out a strained or unusual meaning for the benefit of the insured." *Kennel Club*, 94 N.W.2d at 92 (citation omitted). "Insurance contracts warrant reasonable interpretation, and not one that amounts to an absurdity." *Prokop*, 457 N.W.2d at 864 (citation omitted).

---

[6] "State law governs the interpretation of insurance policies." *Nat'l Union Fire Ins. Co. Of Pittsburgh v. Terra Indus., Inc.*, 346 F.3d 1160, 1164 (8th Cir. 2003) (citation omitted).

## DISCUSSION

National Farmers Union asserts that it is entitled to summary judgment because the accident in question is not covered under the Insurance Policy. More specifically, National Farmers Union argues that there is no coverage because (1) the tractor/semi-trailer driven by Biesma on the day of the accident does not meet the definition of "car," "utility car," or "farm car" as described in the Insurance Policy; (2) Biesma was using the tractor/semi-trailer to carry property for a charge; (3) Biesma was using the tractor/semi-trailer in the course of a business; and (4) Biesma regularly and frequently drove the tractor/semi-trailer. Defendants refute each of these assertions and contend that the Insurance Policy covers the accident in question.

### I.

### WHETHER NATIONAL FARMERS UNION IS ENTITLED TO SUMMARY JUDGMENT ON ITS CLAIM THAT THE TRACTOR/SEMI-TRAILER FAILS TO MEET THE DEFINITION OF "CAR," "UTILITY CAR," OR "FARM CAR"?

National Farmers Union contends that Namminga's vehicle, which was driven by Biesma at the time of the accident, was a semi tractor-trailer with an attached grain hopper, which is not a car as defined in the Insurance Policy. National Farmers Union argues that it has no duty to defend or indemnify Biesma in the underlying action because Namminga's vehicle is not a four wheel land motor vehicle, utility car or farm car and is therefor outside the policy's definition of "car."

Defendant Biesma concedes that the policy's definition of farm car ("Farm car does not include a tractor-trailer truck") excludes tractor-trailer trucks from its definition, but that the definition of utility car does not exclude tractor-trailer trucks. The Insurance Policy defines "utility car" as follows: "Utility car means, if not used in any business other than farming, a motor vehicle with a GVW less than 15,000 pounds of the pick-up, panel or van body type, other than a farm car." Although the record is unclear as to the GVW[7] the "natural and obvious import" of "pick-up, panel or van body type" excludes the tractor/semi-trailer driven by Biesma from the definition of utility car. The Court rejects Defendant Biesma's argument that since the tractor/semi-trailer has an "enclosed

---

[7]"Gross vehicle weight rating or GVWR means the value specified by the manufacturer as the loaded weight of a single vehicle." 49 C.F.R. § 571.3 (2012).

cab" and an "open body" it has a pick-up body type. Since the tractor/semi-trailer driven by Biesma possessed more than four wheels, it is not a car as that term is described in the Insurance Policy. National Farmers Union prevails on the issue of the tractor/semi-trailer driven by Biesma on the day of the accident  not meeting the definition of "car," "utility car," or "farm car" as described in the Insurance Policy.

## II.
## WHETHER THE OTHER INSURANCE PROVISION OF THE INSURANCE POLICY PROVIDES COVERAGE?

Defendant Farm Bureau argues that even if the tractor/semi-trailer driven by Biesma on the day of the accident does not meet the definition of "car," "utility car," or "farm car,"the OTHER INSURANCE provision of the Insurance Policy expands liability coverage in those circumstances where there is other applicable automobile liability insurance for losses giving rise to legal liability of Biesma when Biesma was operating a vehicle he does not own. The PART I - LIABILITY section of the Insurance Policy contains an OTHER INSURANCE provision which states in part:

> If there is other applicable auto liability insurance <u>on a loss covered by this Part</u>, **we** will pay **our** proportionate share as **our** limits of liability bear to the total of all applicable liability limits. Any insurance afforded under this Part for a vehicle **you** do not own, however, is excess over any other collectible auto liability insurance.

Doc. 33-1 at 12 (emphasis added).  Biesma argues that the reference to a "vehicle you do not own" in the OTHER INSURANCE provision creates at least an ambiguity as to whether the tractor/semi-trailer falls under the policy's coverage. Ambiguity in an insurance policy, however,  is determined with reference to the policy as a whole and the plain meaning and effect of its words. *See Cornelius v. National Cas. Co.*, 813 N.W.2d 167,169 (S.D. 2012). Since Part I of the Insurance Policy is the liability coverage part and the "Other Insurance" provision is also under Part I, the "Other Insurance" provision does not provide an independent basis for coverage when the provision specifically references "other applicable auto liability insurance on a loss covered by this Part," and the loss is not

otherwise covered by the liability coverage part of the Insurance Policy.

III.
## WHETHER NATIONAL FARMERS UNION IS ENTITLED TO SUMMARY JUDGMENT ON ITS CLAIM THAT NO INSURANCE COVERAGE EXISTS BECAUSE BIESMA WAS USING THE TRACTOR/SEMI-TRAILER TO CARRY PROPERTY FOR A CHARGE?

National Farmers Union contends that coverage is excluded under the Insurance Policy because Biesma was using the tractor/semi-trailer to carry property for a charge. Exclusion (1) under PART I - LIABILITY provides in relevant part: "**Bodily injury** or **property damage** arising out of ownership, maintenance, or use of a vehicle when used to carry persons or property for a charge." Doc 33-1 at 10. National Farmers Union cites to *United States v. Milwaukee Guardian Insurance Co.*, 966 F.2d 1246 (8th Cir. 1992), and *Martin v. Colonial Insurance Co. of California*, 644 F. Supp. 349 (D. Del. 1986), as support for its position. Neither of those cases is controlling under the facts of the case at hand.

*In United States v. Milwaukee Guardian Insurance Co.*, 966 F.2d 1246 (8th Cir. 1992), the Eighth Circuit upheld a denial of coverage under an automobile insurance policy exclusion for a vehicle used to carry persons or property for a charge, when a postal service employee drove his privately owned vehicle and delivered telephone books as an employee of the postal service, and the postal service received a fee for this service. The Eighth Circuit declined to decide in the context of the *Milwaukee Guardian Insurance* case whether the payment of salary and mileage reimbursement to an insured, who is a government employee, would actuate the exclusion. 966 F.2d at 1247.

*In Martin v. Colonial Insurance Co. of California*, 644 F. Supp. 349, 351 (D. Del. 1986), the carrying property for a fee exclusion was found applicable when the insured was an independent contractor who leased the truck he was to drive and signed a contract for the delivery of each truck load of goods that he hauled, and was paid based on the number of truckloads of good he hauled each week. The insured was in an accident after unhooking a malfunctioning truck from its trailer and attempting to drive to a tow truck. *Id.*

In the case at hand, Biesma was an hourly -wage employee who drove Namminga's truck to

8

haul chicken manure, haul grain to the elevator, and haul corn to Poet and Iowa. Biesma also did some switching of tires and cultivating on Namminga's farm. Although Biesma was paid for his work, which involved driving the tractor/semi-trailer, neither he nor Namminga was paid based on the delivery of products. Since "charge" does not include this situation where the truck owner had a paid employer haul product for the truck owner, National Farmers Union is not entitled to summary judgment based on the exclusion for the use of a vehicle to carry persons or property for a charge.

## IV.
## WHETHER NATIONAL FARMERS UNION IS ENTITLED TO SUMMARY JUDGMENT ON ITS CLAIM THAT COVERAGE IS EXCLUDED BECAUSE BIESMA WAS USING THE TRACTOR/SEMI-TRAILER IN THE COURSE OF A BUSINESS?

National Farmers Union contends that coverage is excluded because Biesma was using the tractor/semi-trailer in the course of a business. It is undisputed that Biesma was returning from hauling corn to Poet at the time of the accident. The course of a business exclusion does not apply to a private passenger car, utility car, or farm car. However, this Court has already held that the tractor/semi-trailer does not fit any of these categories. National Farmers Union is therefore entitled to summary judgment on its claim for the course of business exclusion.

## V.
## WHETHER NATIONAL FARMERS UNION IS ENTITLED TO SUMMARY JUDGMENT ON ITS CLAIM THAT COVERAGE IS EXCLUDED BECAUSE BIESMA HAD REGULAR USE OF THE TRACTOR/SEMI-TRAILER?

National Farmers Union contends that coverage is excluded based on the policy exclusion for use of any vehicle, other than an insured car, which is owned by or furnished or available for regular use by the insured. The Insurance Policy does not define the term "regular use." This Court agrees with the Court of Appeals of Arizona, which has observed that the term "denotes continuous use; uninterrupted normal use for all purposes; without limitation as to use; and customary use as opposed to occasional use or special use." *Travelers Indem. Co. v. Hudson*, 15 Ariz.App. 371, 375, 488 P.2d 1008, 1012 (1971). The Supreme Court of South Carolina has held that in evaluating an individual case to determine whether the conduct falls within the "regular use" exclusion, coverage depends on

9

the availability of and frequency of the use of the vehicle by the non-owner. *Whaley v. Great Am. Ins. Co.*, 259 N.C. 545, 554, 131 S.E.2d 491, 498 (1963).

Namminga characterized the frequency and regularity of when Biesma took the tractor/semi-trailer to the Poet plant in Scotland as "if we had time we probably did it or if he had time." Namminga also testified that Biesma delivered the corn "at our convenience." Biesma testified that he drove the tractor/semi-trailer to the Poet plant in Scotland or to Nebraska when Namminga called him, usually the night before, and told him what he wanted done.

In this case, the tractor/semi-trailer was available to Biesma only when Namminga directed him to drive the vehicle. There was no continuous use of the tractor/semi-trailer, but merely occasional or special use of the vehicle. As such, the "regular use" exclusion does not apply in this case.

## CONCLUSION

This Court has concluded that the tractor/semi-trailer driven by Biesma on the day of the accident does not meet the definition of "car," "utility car," or "farm car" as described in the Insurance Policy and that the Other Insurance provision in the Insurance Policy does not expand coverage under the policy. This Court has also concluded that Biesma was using the tractor/semi-trailer in the course of a business and the course of business exclusion is applicable. For these reasons Plaintiff National Farmers Union Property and Casualty Company is entitled to summary judgment on its declaratory judgment action regarding insurance coverage. Accordingly,

IT IS ORDERED that Plaintiff's motion for summary judgment (Docket 30) is granted.

Dated this 11th day of July, 2013.

BY THE COURT:

Lawrence L. Piersol
United States District Judge

ATTEST:
JOSEPH HAAS, CLERK

BY:

DEPUTY

10